CÁNDIDO MEDINA MORALES, demandante y recurrido, *v.* JUAN A. CRUZ MANZANO, demandado y peticionario.

Número: CC-95-5          Resuelto: 11 de octubre de 1996

*Héctor Quijano Borges,* de *Méndez Méndez & Quijano Borges,* abogado del peticionario; *Antonio E. Arraiza,* abogado del recurrido.

## I

PER CURIAM: En *Noriega v. Gobernador,* 122 D.P.R. 650 (1988), declaramos la inconstitucionalidad de la práctica de preparar, actualizar y preservar expedientes, carpetas, listas, ficheros, etc. de personas, agrupaciones y organizaciones, única y exclusivamente por sus creencias o tendencias políticas e ideológicas, y ordenamos la entrega de dichos documentos a los ciudadanos y a las entidades

afectados, mediante reglas diseñadas por el foro de instancia.

Ante ese mandato, el Estado solicitó que se eliminara de los documentos los nombres de los agentes encubiertos e informantes previo a su entrega. En *Noriega v. Gobernador*, 130 D.P.R. 919 (1992), rechazamos ese pedido.

La carpeta del Sr. Cándido Medina Morales revela que el Sr. Juan A. Cruz Manzano, Alcalde de Manatí, fue uno de los informantes de la Policía de Puerto Rico.[1] Por ello, el 15 de octubre de 1992, Medina Morales lo demandó por daños y perjuicios ante el Tribunal Superior, Sala de Arecibo.[2]

La demanda fue contestada, y entre las defensas afirmativas presentadas el señor Cruz Manzano planteó que *no aducía hechos que justificaran la concesión de un remedio*. Oportunamente, el señor Cruz Manzano solicitó, *sin éxito*, una sentencia sumaria a su favor. Pidió la reconsideración al amparo de nuestras expresiones en *Noriega v. Gobernador*, supra. En reconsideración, dicho foro (Hon. Edna Abruña Rodríguez, Juez) se negó.

No conforme, el señor Cruz Manzano presentó una petición de *certiorari* ante el Tribunal de Circuito de Apelaciones. Éste,[3] en su Sentencia de 31 de marzo de 1995, notificada el 19 de abril, denegó la expedición del

---

[1] El señor Cruz Manzano fue entrevistado por el policía Héctor Martínez, placa Núm. 3737, el 27 de agosto de 1980 en sus oficinas en el Municipio de Manatí. Dijo que conocía a Medina Morales hacía cinco (5) años y que "sabe que ... es un radical completo ... Pertenece al P.S.P. ... [y] es de la misma clase de Angel Gandía y otros locos como él, yo diría que sí, que hay que mantenerlo vigilado". Memorando del Policía Héctor Martínez al Teniente Nelson González de 28 de agosto de 1980, págs. 1–2.

[2] En síntesis, alegó que un alcalde no puede discriminar por razón de sexo, raza, color o ideologías políticas, y que entre los deberes y las responsabilidades de un alcalde no está el fungir como agente, confidente o informante de la Policía; el señor Cruz Manzano, al dar información a la Policía, actuó *ultra vires* en cuanto al cargo de Alcalde que ocupaba en ese entonces y violó los derechos civiles del señor Medina Morales. Cabe destacar que la propia demanda señala expresamente que *al señor Cruz Manzano se le demandó en su carácter personal*.

[3] Panel integrado por su Presidenta, la Hon. Juez Alfonso de Cumpiano (Ponente) y los Hons. Jueces González Román y Rossy García.

recurso. Concluyó que la existencia o no de una causa de acción según *Noriega v. Gobernador*, supra, dependería de la intención con que el informante suministró la información al Estado y de su conocimiento del uso que se le daría. Presentada la reconsideración, fue declarada sin lugar.

Contra esa determinación, acudió ante nos el señor Cruz Manzano.[4] Expedido el recurso, con el beneficio de los alegatos de ambas partes, resolvemos.

## II

Desde *Noriega v. Gobernador*, supra, reconocimos que estábamos ante un caso constitucional e históricamente único, *de singulares remedios, cuya trayectoria requería el más ponderado análisis judicial sobre la marcha.*

■ Determinamos que no procedía la exclusión de los nombres de los agentes encubiertos e informantes, pues esa información era esencial para una justa decisión de la controversia, y acceder demoraría por años la entrega, propiciaría miles de controversias, implicaría gastos no justificables y, sobre todo, desvirtuaría la razón de las entregas de los expedientes. *Noriega v. Gobernador*, supra.

Ahora bien, cualificamos nuestra decisión a los pronunciamientos siguientes:

Este pensamiento describe lo complejo de este zigzagueante proceso judicial: una rutina investigativa, gubernamental y

---

[4] Alega:

"Erró el Honorable Tribunal de Circuito de Apelaciones al denegar la solicitud de revisión mediante certiorari de una resolución del Tribunal de Primera Instancia, Tribunal Superior de Arecibo, declarando sin lugar la solicitud de sentencia sumaria presentada por la parte peticionaria-demandada, para que el pleito fuera desestimado a tenor con lo resuelto por este Honorable Tribunal Supremo en el caso de *Noriega vs. Hon. Rafael Hernández Colón*, 92 JTS 85, en el sentido de que como cuestión de derecho, un ciudadano que la Policía de Puerto Rico le confeccionó una carpeta por razón de su ideología política, no tiene una causa de acción en daños y perjuicios contra un alcalde, en su carácter personal y/u oficial, que aparece ofreciendo información en la carpeta, toda vez que la *responsabilidad civil y condena total* y única tiene que recaer sobre el Estado." (Escolio omitido y énfasis suplido.) *Certiorari*, págs. 5–6.

pervertida que por décadas causó en el país un eclipse constitucional, devaluó valores comunitarios y produjo una madeja jurídica que estamos obligados a desenredar para la tranquilidad espiritual de la presente generación y las futuras. *El Estado, aprovechando —más que las diferencias legítimas ciudadanas— las aprehensiones, los temores, la ignorancia, la intolerancia e incluso la histeria en determinados momentos, elevó a categoría oficial la práctica de fichar y mantener listas y expedientes de quienes profesaban la ideología independentista, como si ello fuera un delito.* Por ende, el remedio judicial no puede ser parcial ni tampoco inconcluso; como afirma Couture, todo proceso "s[ó]lo se explica por su fin, el proceso por el proceso no existe".

Apreciar este recurso en sus perspectivas jurídico-constitucional, histórica, social y política requiere —a modo de brevísimo repaso— exponer los principios elementales pertinentes que sirven de ancla a nuestro sistema de vida constitucional. *Su característica primordial, quintaesencia de gobierno democrático, es la libertad de pensamiento y expresión.* Bajo cualquiera de las teorías principales que se aducen en abono del derecho a la libre expresión, en todo asunto, *estamos en libertad de diferir frente a los gobernantes y demás personas. Nadie ni nada está inmune a la discusión.* "Si nos cercioramos de su profundo significado sabremos ver en la palabra 'Democracia' el gran espacio que deja abierto a la posibilidad de conflictos ideológicos." C.J. Friedrick, *La democracia como forma política y como forma de vida,* Madrid, Ed. Tecnos S.A., 1961, pág. 108. Por tal razón, es menester distinguir entre el Estado, el Gobierno de turno y el partido en el poder; ninguno puede reclamar eterna permanencia.

La democracia es una forma de vida, en la cual —a modo de experimento diario— se pone a prueba toda la gama de ideas, opiniones, conclusiones y demás percepciones que el ser humano genera en una sociedad pluralista. *En la zona intelectual y afectiva, el individuo se presenta empapado de conflictos y diferencias con un juicio crítico a veces sano, elevado y constructivo y, en ocasiones, producto de la mala fe, el fanatismo, la intolerancia, la ignorancia, el prejuicio, etc.* Basta reflexionar nuestras experiencias cotidianas —interfamiliares, con los vecinos, e incluso aquellos a quienes no conocemos directamente— para darnos cuenta del cúmulo de sentimientos y actitudes positivas y negativas involucradas. "[S]i todos los hombres fuesen amigos, la justicia sería innecesaria, pues se haría por amor, y como amor, lo que ésta exige y más de lo que exige. Pero tal hipótesis es inviable, porque las enemistades y el desamor son también ineliminables de la vida del hombre." L. Legay y

Lacambra, *El Derecho y el Amor*, Barcelona, Ed. Bosch, 1976, pág. 95.

No importa la teoría que endosemos —modelo de libre mercado de ideas, modelo del proceso democrático, modelo de libertad o modelo de tolerancia— promover el desarrollo saludable en una sociedad democrática implica aceptar, como inevitable, el derecho de toda persona —familiares, amigos, vecinos, compañeros de trabajo y desconocidos— de toda tendencia ideológica (independentista, autonomista, estadista, comunista, anarquista, socialista, etc.), *a manifestar un criterio distinto y antagónico del nuestro, a tener de nosotros una buena o mala opinión, a criticarnos ideológicamente, a percibir distorsionada o perniciosamente nuestro comportamiento y nuestras creencias, en fin, a juzgarnos severa o intolerantemente,* alejados del mandamiento puro de amar al prójimo. Nuestras opiniones y las de ese prójimo, sean o no prejuiciadas, no pueden ser objeto de control gubernamental. Ello atentaría contra la naturaleza humana y sofocaría el libre pensamiento y la expresión. (Escolio omitido, énfasis en el original suprimido y énfasis suplido.) *Noriega v. Gobernador*, 130 D.P.R. 919, 923–925 (1992).

Dentro de ese contexto, sostuvimos clara y sin ambages que

[s]i algo debe quedar bien claro en este proceso es que ser independentista no constituye un delito, pero *no podemos caer en la superficialidad de asfixiar la libre expresión de quienes son contrarios a ese ideario. Con sujeción a las normas vigentes en materia de daños, la responsabilidad civil y la condena total y única tienen que recaer sobre el Estado* que montó todo un costosísimo y elaborado aparato oficial para pervertir la útil facultad investigativa de la Policía y así mal utilizar esas discrepancias ciudadanas. (Énfasis en el original suprimido y énfasis suplido.) *Noriega v. Gobernador*, 130 D.P.R. 919, 947 (1992).

No debemos alterar esa norma. Al rechazar el reclamo de confidencialidad del Estado según las Reglas 31 y 32 de Evidencia, 32 L.P.R.A. Ap. IV, resolvemos que aquellas personas catalogadas

... [de] informantes ocasionales (el vecino, *el alcalde,* el cartero, el compañero de trabajo, el médico del pueblo, el juez, etc.), de quienes el Estado obtuvo directa o sutilmente información, *tan sólo ejercitaban sus derechos constitucionales a expre-*

*sar su opinión sobre una persona.* Esa información podía ser la impresión pública en la comunidad, la apreciación individual, o aquella que a fin de cuentas, podríamos catalogar como chisme, fenómeno humano". (Énfasis en el original suprimido y énfasis suplido.) *Noriega v. Gobernador*, supra, págs. 646–647.

## III

■ A la luz de estos pronunciamientos, tiene razón el señor Cruz Manzano al argüir de que no existe causa de acción civil por daños contra las personas que, como informantes de la Policía, brindaron al Estado información que fue utilizada en la confección de carpetas, ficheros y listas. Así lo resolvimos en *Noriega v. Gobernador*, supra, y ahora reiteramos: *la responsabilidad civil y la condena total debe recaer única y exclusivamente en el Estado.*

Tanto el foro de instancia como el apelativo incidieron al negarse a desestimar. *Se revocará la sentencia del Tribunal de Circuito de Apelaciones de 31 de marzo de 1995 y se desestimará la demanda.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita. El Juez Asociado Señor Rebollo López no intervino.