PERIÓDICO CLARIDAD, demandante y recurrente, *v.* SECRETARIO DE HACIENDA, demandando y recurrido; EL DÍA, INC., interventor.

*Número:* RE-94-506          *Resuelto:* 3 de marzo de 1995

*Lourdes Muriente*, abogada de la parte recurrente; *Jorge C. Pizarro*, de *Domínguez & Totti*, abogado de la parte interventora.

## RESOLUCIÓN

A la solicitud de revisión presentada en este caso, *no ha lugar.*

No incidió el tribunal de instancia al aplicar a los hechos de este caso lo dispuesto por el Art. 18 de la Ley Núm. 2 de 6 de octubre de 1987 (13 L.P.R.A. 3055(a)(1)).

Lo acordó el Tribunal y certifica el señor Secretario General. Los Jueces Asociados Señores Negrón García, Alonso Alonso y Fuster Berlingeri expedirían. El Juez Asociado Señor Negrón García emitió un voto disidente. El Juez Asociado Señor Fuster Berlingeri emitió un voto disidente, al cual se unió el Juez Asociado Señor Alonso Alonso.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Voto disidente del Juez Asociado Señor Negrón García.

I

Expediríamos. Ante una cuestión pura de derecho —con el beneficio de la comparecencia de todas las partes— sin ulterior trámite debimos ampliar el *mandamus* del Tribunal de Primera Instancia, Sala de San Juan (Hon. Ángel G. Hermida, Juez Superior), y ordenar al Secretario de Hacienda que divulgara al *Periódico Claridad* las sumas contenidas en el acuerdo final sobre las planillas de contribuciones correspondientes a 1988, 1989, 1990 y 1991 del interventor el periódico *El Nuevo Día, Inc.*

II

La Ley de Contribuciones sobre Ingresos, Ley Núm. 91 de 29 de junio de 1954 (13 L.P.R.A. sec. 3055(f)),[1] impone

---

[1] Dispone:
"*Inspección de Listas de Contribuyentes en las Colecturías.*Tan pronto como sea

al Secretario de Hacienda el *deber ministerial* de exponer al público anualmente los nombres y las direcciones postales de todo contribuyente, en sus respectivos municipios, incluyendo *el monto pagado.* Es absurdo, pues, extenderle al ente corporativo *El Nuevo Día, Inc.* una confidencialidad que no tienen ni siquiera las personas naturales. A fin de cuentas, el incumplimiento del Secretario de Hacienda de ese mandato legal no torna confidencial el monto de la contribución declarada. Este funcionario carece de facultad legal para imprimirle secretividad a acuerdos originados en deficiencias.

Como ha dicho Elliot E. Slotnick:

" 'Gran parte de lo que muchos adultos aprenden acerca del Gobierno —sus instituciones y miembros, sus actividades, decisiones, defectos, fortalezas y capacidades— dimana de los medios de comunicación masiva. Los mismos medios de comunicación masiva tienen el poder de decidir qué controversias se llevarán a la atención del público, los términos en que serán presentadas, y quién participará, bajo qué condiciones, en la presentación. Debido a las materias que cubren (y no cubren) y las formas en que las estructuran, los medios masivos señalan a los americanos sobre qué pensar, cómo pensar acerca de ello, a veces aún qué pensar.'

Claramente, los medios son algo más que pasivos canales de información. Ellos sirven como filtros y embudos para el universo de eventos que pudieran aparecer ante los ojos del público. Los eventos son interpretados, puestos en contexto, sujetos a especulación y delineados por los medios porque, como apunta Graber, 'los hechos no hablan por sí mismos'. Verdaderamente, 'en un mundo en que la prensa decide qué no informar, se convierte en algo casi tan importante como los eventos mismos en la formulación de la realidad percibida... El anverso es también de aplicación: lo que la prensa considera digno de ser·enfatizado se convierte evidentemente en parte importante de 'la realidad'.

---

factible en cada año, el Secretario hará que se preparen y queden disponibles para inspección pública, en aquella forma que él determine, en las colecturías de rentas internas de cada municipio y en aquellos otros sitios que él disponga, listas conteniendo el nombre y la dirección postal de cada persona que ha rendido planilla en dicho municipio y *el monto de la contribución declarada.*" (Énfasis suplido.)

En una visión más amplia, los medios pueden ser un vehículo para la 'normación' (normation) en la sociedad americana, sirviendo como 'modelos de actitudes y comportamiento'. Mientras crean imágenes de las noticias, los medios pueden 'indicar qué visiones y comportamiento son aceptables ... y cuáles son inaceptables o fuera de la corriente mayoritaria (mainstream)'. De forma similar, los medios pueden indicar 'qué se conforma con los parámetros prevalecientes de justicia y moralidad'.

La centralidad del vínculo de los medios entre las instituciones gubernamentales, su formulación de política pública y la politización podría tener mayor vigencia para la Judicatura, que es la rama del gobierno acerca de la cual la mayoría de los americanos están decididamente carentes de información." (Traducción nuestra.) E.E. Slotnick, *Media Coverage of Supreme Court Decision Making: Problems and Prospects*, 75 (Núm. 3) Judicature (Oct.-Nov. 1993).

—O—

Voto disidente emitido por el Juez Asociado Señor Fuster Berlingeri, al cual se une el Juez Asociado Señor Alonso Alonso.

Por razón del alto interés público que reviste el novedoso asunto fundamentadamente planteado en esta petición de revisión, estimo que hemos debido expedir el auto solicitado. Se ha traído ante nuestra consideración con respetables argumentos una importante controversia que contiene varias cuestiones de derecho nunca antes resueltas por este Foro, que nos compete decidir, y que hemos debido dilucidar.

I

La corporación dueña del periódico *El Nuevo Día* (en adelante El Día, Inc.) y el Secretario de Hacienda (en adelante Secretario) llegaron a un acuerdo en relación con una deficiencia contributiva que el Secretario le había notificado a dicha corporación. El Día, Inc. incurrió en la referida deficiencia durante 1988, 1989, 1990 y 1991 mediante

una deducción por depreciación flexible tomada indebidamente por esa corporación durante los referidos años para reducir su responsabilidad fiscal. En virtud del acuerdo entre El Día, Inc. y el Secretario, la corporación pagaría determinadas contribuciones con los correspondientes intereses y penalidades, por la deducción indebidamente tomada durante cuatro años, pero sería exonerada de intereses y penalidades por la deficiencia en pago de la contribución estimada para 1992. Este acuerdo fue suscrito el 17 de mayo de 1993.

Así las cosas, el periódico *CLARIDAD* le requirió al Secretario que le entregara copia del acuerdo contributivo que éste había realizado con El Día, Inc. *CLARIDAD* formuló la petición varias veces durante tres meses sin que el Secretario le diese respuesta alguna. En vista de la negativa del Secretario, *CLARIDAD* presentó demanda de *mandamus* contra éste ante el Tribunal Superior, Sala de San Juan. Alegó que el Secretario estaba jurídicamente obligado a entregarle al periódico copia del acuerdo contributivo en cuestión, e invocó la libertad de prensa y el derecho de información en apoyo de su demanda.

Luego de varios trámites procesales, el 16 de septiembre de 1994 el tribunal de instancia dictó sentencia mediante la cual ordenó la entrega a *CLARIDAD* del acuerdo contributivo entre el Secretario y El Día, Inc., *pero tachando de dicho acuerdo todas las cifras en dólares que apareciesen en el mismo.* Estimó el foro a quo que de ese modo se satisfacían tanto el interés del periódico respecto al acuerdo contributivo como el derecho de la corporación a la secretividad de sus planillas. Señaló expresamente el tribunal que:

> No hemos pasado por alto el argumento que se hace en el último escrito del periódico Claridad con relación a "si ha de prevalecer la libertad de prensa, el derecho del pueblo a estar informado, el derecho de acceso a la información sobre cómo el gobierno maneja los asuntos públicos, o por el contrario han de prevalecer los cuartos obscuros y la secretividad que sólo lleva

a la mala administración y a la corrupción." Por suerte, en este caso no es necesario caer en ninguno de esos polos opuestos. El entregar los acuerdos finales con las cifras en dólares tapadas nos parece hace el único balance posible entre esos dos extremos, y permite al periódico Claridad conocer e informar adecuadamente al pueblo sobre todo lo que el pueblo necesita saber, pero sin revelar aquella información confidencial del negocio del periódico interventor, y sin vulnerar el principio de la secretividad de las planillas de contribución sobre ingresos. Apéndice del Recurso de revisión, pág. 6.

Inconforme con el fallo del tribunal a quo, *CLARIDAD* acudió oportunamente ante nos mediante Solicitud de revisión el 19 de octubre de 1994. Alegó, en esencia, que había errado el foro de instancia al ordenar la entrega del acuerdo sin las cifras concretas.

## II

Son dos los planteamientos medulares que ha formulado el recurrente ante nos. En primer lugar, señala que no hay fundamento jurídico para otorgarle confidencialidad a las cifras contenidas en el acuerdo contributivo. Según el recurrente, la ley concede confidencialidad *únicamente* a las *planillas de contribución sobre ingreso,* no a acuerdos que resulten de deficiencias contributivas notificadas al contribuyente. Aduce *CLARIDAD* que extender por analogía a dichos acuerdos la confidencialidad de las planillas es improcedente, no sólo porque no fue eso lo que el legislador dispuso, sino, además, porque ello es contrario al propósito de la protección que la ley le brinda a las planillas y a lo que proveen otras disposiciones estatutarias pertinentes. Argumenta el recurrente que la confidencialidad de las planillas (13 L.P.R.A. sec. 3055) es un incentivo que se le ofrece a los contribuyentes para fomentar que cumplan cabalmente su responsabilidad fiscal, por lo que sería incongruente extender tal privilegio por puro fíat administrativo a aquellos a quienes el Departamento de Hacienda les ha señalado deficiencias por reclamar beneficios contributivos

que no le corresponden. Indica *CLARIDAD*, además, que extenderle a unos acuerdos contributivos la confidencialidad que el legislador sólo concedió a las planillas como tal, es contrario a la norma general que reconoce que todo ciudadano tiene derecho de acceso a los documentos públicos y que el Estado, de ordinario, no puede cubrir con el manto de secretividad los asuntos que realiza precisamente a nombre del pueblo, norma que está estatuida en el Art. 409 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1781, y reiterada en nuestra jurisprudencia (*Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982)). Finalmente, en cuanto a este primer planteamiento medular, alega el recurrente que aun la confidencialidad que se le brinda a las propias planillas es *limitada*, ya que no cubre el *monto* de la contribución declarada por el contribuyente (13 L.P.R.A. sec. 3055(e)), por lo que resulta incongruente que se excluyan de un acuerdo contributivo *todas* las cifras que allí aparecen cuando ni siquiera a las propias planillas se les otorga tal confidencialidad.

El otro planteamiento de *CLARIDAD* es aun más medular que el ya reseñado porque invoca principios constitucionales del mayor rango y jerarquía. Aduce el recurrente que por razón de la libertad de palabra y de la libertad de prensa garantizada en Puerto Rico, tanto por nuestra Constitución como por la federal, prevalece en nuestra jurisdicción el derecho de acceso a la información gubernamental. Señala que reiteradamente en nuestra jurisprudencia se ha reconocido la libertad de expresión y sus corolarios *dentro de la más dilatada visión*, de modo tal que el derecho de acceso a información en poder del Estado debe interpretarse liberalmente a favor de la ciudadanía, y sólo puede restringirse excepcionalmente cuando exista una justificación apremiante. Argumenta *CLARIDAD* que la determinación del foro a quo de darle confidencialidad a las cifras contenidas en el acuerdo contributivo objeto de este pleito es claramente contraria a los referidos princi-

pios constitucionales y a la corriente jurisprudencial que los ha reconocido. Cita en apoyo de su contención los casos de *Noriega v. Gobernador*, 130 D.P.R. 919 (1985); *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987); *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153 (1986); *Soto v. Srio. de Justicia*, supra, y otros. Señala, además, que viola particularmente el fundamental esquema constitucional a favor de la libertad de prensa y el derecho a la información el hecho de que el Estado otorgue confidencialidad para ocultar una actuación ilícita.

## III

Como puede observarse de lo antes reseñado, el recurrente en este caso ha presentado alegaciones de mucho peso, cuyos méritos no pueden aquilatarse propiamente sin cabal estudio y reflexión. Se trata de cuestiones particulares que no habían estado previamente ante nuestra consideración y que están revestidas del mayor interés público. En mi criterio, no es el tipo de asunto que puede denegarse con un mero "no ha lugar". Más bien, representa la clase de controversia que amerita consideración a fondo para pautar las normas correspondientes sobre el particular. Por ello, insisto en que hemos debido expedir el auto solicitado y disiento de la decisión en contrario de la mayoría del Tribunal.